OPINION OF THE COURT
Edward M. Kaufmann, J.
Before the court in this private placement adoption proceeding is an application for an order designating a named certified social worker as a disinterested person to make the postplacement investigation required by Domestic Relations Law § 116. Because this social worker has not been found to *179 be a disinterested person qualified by training and experience to conduct the investigation, and because the probation service of Family Court is qualified to do so, the application is denied and the Family Court Probation Service is ordered to conduct the investigation.
I.
Petitioners, prospective adoptive parents, previously petitioned the court for certification as qualified adoptive parents. They completed the necessary certification application and hired a certified social worker, Mary Helen Evans, to prepare and forward to the court a preplacement investigation. The court ordered reports from the New York State Division of Criminal Justice Services and the Statewide Central Register of Child Abuse and Maltreatment.[1] The court then conducted a personal interview of petitioners.[2] Petitioners were certified as qualified adoptive parents and subsequently assumed physical custody of the child they now seek to adopt.
Petitioners’ application for an order designating a certified social worker, Mary Helen Evans, to conduct the postplacement investigation states: "Ms. Evans was approved by the Court as a qualified disinterested person pursuant to Domestic Relations Law section 115-d * * * Domestic Relations Law section 116.3 allows the post-placement investigation to be made by any person * * * deemed qualified by the Court.”
A.
Ms. Evans was not approved by me, as petitioners state, "as a qualified disinterested person pursuant to Domestic Relations Law § 115-d.”
*180 Domestic Relations Law § 115-d sets forth the procedure for certification in private placement adoptions. The applicant either files a petition stating that "a pre-placement investigation will be undertaken by a disinterested person, as such term is defined in subdivision four [of section 115-d]” (Domestic Relations Law § 115-d [1] [d]) or requests the court to appoint a disinterested person to conduct the investigation (Domestic Relations Law § 115-d [2]). The preplacement investigation "shall be made by a disinterested person who in the opinion of the judge or surrogate is qualified by training and experience to examine into the allegations set forth in the application and any other factors which may be relevant to the suitability of the applicant or applicants as qualified adoptive parent or parents. For the purposes of this section, a disinterested person shall also include a certified social worker, the probation service of the family court or an authorized agency designated by the court to conduct pre-placement investigations.” (Domestic Relations Law § 115-d [4]; emphasis added.)
Petitioners never asked me to designate a disinterested person, qualified, in my opinion, to examine into the allegations set forth in the petition and other factors relevant to their suitability as potential adoptive parents. Instead, petitioners filed their certification petition and stated that the investigation would be undertaken by the social worker they selected. This was appropriate since, pursuant to Domestic Relations Law § 115-d (4), the Legislature has deemed Ms. Evans and all certified social workers "disinterested person[s]” to conduct the preplacement certification investigation.[3]
While I certified petitioners as qualified adoptive parents, this does not mean, as petitioners apparently believe, that I also impliedly found Ms. Evans to be a disinterested person qualified by training and experience to conduct preplacement adoption investigations. I read and considered Ms. Evans’ report, but my decision to certify petitioners was not based exclusively on her recommendation. In making my decision, I considered the certification application, the reports from the New York State Division of Criminal Justice Services and the *181 Statewide Central Register of Child Abuse and Maltreatment, and, most importantly, my personal interview of petitioners.
B.
Prior to finalization of an adoption, the court must order a postplacement investigation (Domestic Relations Law § 116 [2]). Unlike the procedure for certification, the court designates "a disinterested person” to conduct the investigation "who in the opinion of the judge or surrogate is qualified by training and experience.” (Domestic Relations Law § 116 [3].)[4] "As used in this section [116], 'disinterested person’ includes the probation service of family court.” (Domestic Relations Law § 116 [5].)
Just as the Legislature has deemed all certified social workers, authorized agencies and the Probation Service "disinterested personfs]” to conduct a preplacement certification investigation, it has deemed the Probation Service a "disinterested person” qualified to conduct postplacement investigations.[5] The Family Court Probation Service is, by statute, "qualified by training and experience” to conduct postplacement investigations. This is not surprising since the Family Court was originally chosen, in part, to exercise jurisdiction over adoption proceedings because of the expertise of its Probation Service (Report of Joint Legis Comm on Court Reorganization, No. 2 — Family Ct Act, 1962 McKinney’s Session Laws of NY, at 3445).
For the court to designate some other disinterested person to conduct the postplacement investigation, it must make a finding that such person is qualified by training and experience to conduct the investigation. Presumably, also, the court must make a determination that such person is "disinterested” in the outcome of the proceeding.
*182 Here, petitioners have not presented evidence that Ms. Evans is qualified by training and experience to conduct the investigation. They mistakenly believed that I had found her to be a person qualified by training and experience to conduct preplacement investigations, and also mistakenly believed that such a finding would also constitute a finding that she is a disinterested person qualified by training and experience to conduct postplacement investigations. Nor could I find that Ms. Evans is "disinterested” in the outcome of the proceeding.
Therefore, I have not, and would not, find Ms. Evans to be a disinterested person qualified by training and experience to conduct the postplacement investigation.
II.
In my opinion, courts should be, at the very least, reluctant to designate persons other than the Probation Service as a disinterested person qualified by training and experience to conduct postplacement private placement adoption investigations.
The Family Court Probation Service is an impartial, fair and objective "disinterested person”, and can, therefore, be relied on for a factual, unbiased investigation. In contrast, a social worker hired by prospective adoptive parents may consciously[6] or unconsciously overlook problems with an adoption that should be brought to the court’s attention. The social worker would be aware, for example, that difficulties with the adoption uncovered by statements in his or her report might cause the adoption bar not to request his or her services in other cases.
The Family Court Probation Service can also be relied on by the court to present investigatory reports based on a uniform methodology. To this end, the State Director of Probation and Correctional Alternatives has promulgated regulations, applicable to adoption reports, designed to implement a "uniform investigation methodology * * * to facilitate the succinct presentation of relevant and factual information for decision-making” (9 NYCRR 350.3 [b] [3]) to fulfill the Department’s function "to provide the ordering court with accurate material and reliable information” (9 NYCRR 350.2 [a]). Under local policies and practices (see, 9 NYCRR 350.12), reports prepared *183 by the New York City Family Court Probation Service use a methodology that includes a review of the adoption file, a visit to the home of the prospective adoptive parents, the gathering and verifying of information about the background, home and neighborhood of the adoptive parents, the gathering and verifying of information about the history and background of the adoptive child and his or her natural parents, an investigation of the consent of the natural parents to the adoption, an investigation of how the adoption came about and the steps the adoptive parents took to obtain the adoptive child, an evaluation of the child’s adjustment in the adoptive home, and presentation to the court of any information about problems that might prevent the adoption. A recommendation is also made to the court as to whether or not the adoption should be granted.
Because the Family Court Probation Service is impartial, unbiased, independent, and uses an excellent uniform methodology in the preparation of its reports, the Judges of the court have relied on the Probation Service for postplacement adoption reports for three decades (see, Family Ct Act § 642, added by L 1962, ch 686). I see no reason whatsoever to designate other persons as "disinterested persons” to make postplacement adoption investigations. The use of social workers hired by clients of the adoption bar to prepare postplacement investigation reports can only create a risk of inaccurate, inadequate or biased information on which a court might rely in the decision to grant the adoption. There would consequently be created, among other risks, a risk to the health or life of a child. No child should be exposed to such a risk, and the Judges of this court have no reason to take such a risk.

. These reports were ordered pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 205.58 (c), which reads: "The court shall order a report (1) from the statewide central register of child abuse and maltreatment setting forth whether the child or the petitioner is, or petitioners are, the subject of or another person named in an indicated report, as such terms are defined in section 412 of the Social Services Law, filed with such register; and (2) from the New York State Division of Criminal Justice Services setting forth any existing criminal record of such petitioner or petitioners, unless the court determines that circumstances otherwise require.”

. Surprisingly, neither the relevant statute (Domestic Relations Law § 115-d) nor the relevant rule (Uniform Rules for Trial Cts [22 NYCRR] § 205.58) requires the adoption court to conduct a personal interview of a prospective adoptive parent or parents before qualifying the parent or parents to assume physical custody of a child.

. To prevent the possibility that a paid social worker will recommend an inappropriate person as qualified to assume custody of a child, it has been recommended that preplacement investigations be conducted by impartial, independent social workers from a court-approved list (Report of Fifth Grand Jury, NY County Sup Ct, April/May Term of 1988, at 40).

. The adoption court may designate, alternatively, an authorized agency to conduct the investigation (Domestic Relations Law § 116 [3]).

. There are reasons why the Legislature deemed certified social workers "disinterested person[s]” to conduct preplacement investigations but not to conduct postplacement investigations. For example, it may be important to complete the preplacement investigation more quickly than an overburdened Probation Service could accomplish. A child cannot be transferred to the physical custody of prospective adoptive parents until after they are certified (Matter of Male Infant A, 150 Misc 2d 893), and delay in the completion of the preplacement investigation might cause some children to remain in hospitals or foster care. In granting an order of adoption, on the other hand, courts are directed to proceed slowly (see, Domestic Relations Law § 116 [1]; § 112 [6]).

. "[T]he possibility exists that a well-paid and unscrupulous [social worker] could approve an unsuitable couple for adoption.” (Report of Fifth Grand Jury, NY County Sup Ct, April/May Term of 1988, at 40.)